IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| ADRIAN DICKEY,<br><br>    Plaintiff,<br><br>vs.<br><br>SHAWNA HUSTED and ALLEN HUSTED,<br><br>    Defendants. | Case No. 25-cv-00200-SMR-WPK<br><br>**AMENDED COMPLAINT AND JURY DEMAND** |

COMES NOW Plaintiff Adrian Dickey ("Plaintiff" or "Adrian") and for his amended cause of action against Defendants Allen Husted and Shawna Husted ("Defendants" or the "Husteds"), states and alleges as follows:

**THE PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Adrian Dickey is an Iowa State Senator, long-time resident of Packwood, Iowa, and proud citizen and representative of the State of Iowa.

2. Defendant Shawna Husted ("Shawna") is Plaintiff's ex-wife, who lives in Warrenton, Virginia. Defendant Shawna Husted is a citizen of the State of Virginia.

3. Defendant Allen Husted is Shawna's remarried husband, who lives with Shawna in Warrenton, Virginia. Defendant Allen Husted is a citizen of the State of Virginia.

4. This Court has subject matter jurisdiction over the counterclaims asserted in this case under 28 U.S.C. § 1332 based on diversity of citizenship, as the Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. This Court has personal jurisdiction over Defendants because of their general and specific contacts within the Court's jurisdiction related to the claims at issue, including

their maintenance of a prior lawsuit against Plaintiff in Jefferson County, Iowa.

6. A substantial part of the events giving rise to the counterclaims occurred in Jefferson County, Iowa. Venue is therefore proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this district.

## GENERAL ALLEGATIONS

7. This lawsuit presents the lengths a disgruntled ex-spouse (with the backing of her remarried husband) will go to harass, discredit, and financially and reputationally injure her former husband.

8. On July 5, 2023, Defendants Shawna and Allen Husted filed a lawsuit against Defendant Adrian Dickey in Jefferson County, Iowa District Court at case number CVEQ004601 (the "Husteds' Lawsuit"). They generally alleged that Adrian previously gave a car to his daughter, Korynn Dickey, "as a gift with 'no strings attached,'" but secretively placed a lien on the vehicle's title and then falsely maintained his right to insurance proceeds after Allen Husted totaled the car.

9. As against Plaintiff, the Husteds asserted directly and/or prompted Korynn Dickey to assert claims for "Failure to Perfect Security Interest" (which is not a theory that Iowa recognizes), and for "Fraud," "Civil Conspiracy," and "Unjust Enrichment."

10. The Husteds joined the Jefferson County Treasurer, Mark Myers, as a defendant for two of these claims, including the count for civil conspiracy.

11. The Husteds in their individual capacity asserted claims against Plaintiff for "Unjust Enrichment," and did so despite never providing Plaintiff with a benefit that would support such a claim.

12. Shortly after commencing suit, the Husteds were approved as Korynn Dickey's guardians and conservators. They filed their court officer's oath on August 23, 2023 in Wapello County case no. GCPR008870.

13. As the guardians and conservators of Korynn Dickey, the Husteds controlled the decision-making, litigation, prosecution and claims at issue, and counterclaim defense.

14. None of the Husteds' allegations, claims or defenses had merit, however.

15. By Ruling and Order dated September 16, 2024, the Iowa District Court granted Plaintiff's motion for summary judgment and motion for sanctions. The Court recognized undisputed evidence establishing each element of Plaintiff's breach of contract counterclaim and awarded judgment in his favor. Other of Plaintiff's counterclaims were established by default due to the Husteds' misconduct during discovery. A copy of that Ruling and Order is attached as Exhibit 1.

16. The Husteds did not seek reconsideration, file an appeal, or otherwise challenge the September 16, 2024 Ruling and Order, which is a final and binding judgment.

17. Further, and in an attempt to escape a final judgment, the Husteds dismissed their claims against Plaintiff the day after the Court held hearing on Plaintiff's dispositive motions. At that point, the frivolousness of the Husteds' positions was thoroughly exposed and inescapable.

18. By this action Plaintiff will ask a jury to hold the Husteds accountable for the cost of their baseless former suit and other related actions, which they prompted and initiated despite knowing falsity and for non-meritorious and improper purposes.

19. For example, the Husteds' Lawsuit alleged that "Adrian never told Korynn that he intended to place a lien on her vehicle, and he never obtained Korynn's consent to

place a lien on her vehicle" and that Plaintiff's security notation was "improper and illegal."

20. But text messages that the Husteds produced plainly demonstrated that they possessed and knew this core allegation was false. As the Iowa District Court found, there was no dispute as to a "clear communication by [Adrian] on July 30, 2020, the date of purchase, that he would be a lienholder":





21. The Iowa District Court continued: "There is simply no evidence that [Adrian] defrauded or cheated his way into becoming a lienholder."

22. But the Husteds' possession of this text exchange and knowing absence of evidence to support their position did not stop the Husteds from initiating and maintaining

their suit, because prevailing on the merits was not their primary purpose.

23. Rather, through their assertions and lawsuit the Husteds primary intended to harass Plaintiff, publicly discredit and embarrass him (including by timing their lawsuit to correspond with his re-election campaign), cause him to incur significant fees, cause him to devote time and effort that diverted him away from his constituents, create a public platform through which the Husteds and Korynn Dickey could spread false and misleading information about Plaintiff, tarnish Plaintiff's reputation, cause emotional harm and irreparably damage the relationship between Plaintiff and his daughter, and such other improper purposes as may be disclosed in discovery.

24. Plaintiff is the Republican state senator for Iowa District 44, and was up for reelection in fall 2024. His intentions to seek another term in the Iowa senate were openly disclosed and required Plaintiff to campaign while the Husteds' Lawsuit and claims were pending.

25. The Husteds communicated with media outlets and referred them to the suit for purposes of disseminating their allegations, so that Plaintiff would suffer embarrassment and harassment by the press and among local constituents, and to hamper his campaign efforts.

26. The Husteds are liberals, and strongly oppose Plaintiff's political viewpoints.

27. The Husteds searched out liberal outlets in particular, such as Bleeding Heartland, a liberal opinion blog on Iowa politics, to provide notice of their allegations and lawsuit with the hope and expectation that these outlet would republish them.

28. The Husteds contacted democratic state senators about Plaintiff, seeking to bring about an investigation or statements about him on the congressional floor, the filing of

an ethics complaint, or to otherwise create an atmosphere of mistrust towards him during the legislative session or in his campaign.

29. The Husteds, along with Korynn Dickey, also communicated with people via Facebook and other social media platforms about the lawsuit. A significant number of their friends and other connections on social media, representing their social media audience, are from Iowa and District 44 in particular, where the Husteds and Korynn Dickey once lived. These communications were made to tarnish Plaintiff's reputation and hurt his reelection prospects.

30. Upon information and belief, at no point did the Husteds disclose to media or political or social media contacts the text message and other information in their possession showing that their allegations against Plaintiff were false. The Husteds understood that if they did so, the people that they contacted would not republish and spread their allegations and claims against Plaintiff.

31. Knowing their lawsuit lacked merit also prompted the Husteds to engage in underhanded discovery tactics.

32. Without limitation, the Husteds conspired as to how they needed to delete information to prevent Plaintiff from obtaining it:



33. The Husteds contemplated that actions like these and their general refusal to cooperate in discovery would cause Plaintiff to "spend more money."

34. The Husteds discussed that they needed to "bribe" Korynn Dickey in advance of her deposition:

35. Allen Husted later texted how "important" it was "for Korynn to put on the

academy performance of her life next week [at depositions]."

36.     In fact, Shawna Husted told Korynn what she needed to say before the Husteds filed suit, despite Korynn telling her mother "I don't remember":



37.     The pair (Shawna particularly) also conspired on messaging their false accusations about Plaintiff to third parties, with Shawna telling Korynn that she needed to read the emails that Shawna sent from Korynn's account "so [she] actually kn[e]w what's going on":



38. The Husteds also improperly used or sought to use legal process against Plaintiff in other ways too.

39. For example, despite knowing that Plaintiff validly disclosed and contracted for his lien notation, the Husteds repeatedly urged the Iowa DOT to open a criminal investigation and prosecute Plaintiff criminally.

40. As further example, the Husteds used subpoena powers that they obtained through the lawsuit in an attempt to coerce disclosure of information about Plaintiff that was irrelevant to their claims and defense.

41. All of these actions and more were intentionally directed at Plaintiff, who the Husteds commonly referred to as "Adrianus."

42. In total, Defendants' conduct caused Plaintiff to incur fees and damages in excess of $100,000. Damages that the Husteds caused to Plaintiff's reputation and to his

relationship with his daughter may be irreparable.

43.     The Husteds, for their part, spent significantly more on attorneys fees than the face value of the claims that they pursued, which was limited to approximately $23,686.

44.     It's very likely that the Husteds spent multiples more than their compensatory damage assertion, and did so because their purpose was not to prevail but to engage in the improper purposes described herein.

45.     None of the Husteds' claims permitted a fee recovery.

## COUNT ONE
### (For Abuse of Process)

46.     Plaintiff hereby incorporates the foregoing paragraphs.

47.     Defendants used legal process, both through the Husteds' Lawsuit and by criminal or like-references to the Iowa Department of Transportation or its investigators, against Plaintiff. Other Husted uses of the legal process may be revealed during discovery.

48.     Defendants' used legal process primarily to accomplish a purpose for which it was not designed, such as and without limitation, to harass Plaintiff, cause embarrassment, discredit him, spread otherwise defamatory material about Plaintiff, tarnish his reputation, create a distraction from his work, daily life, and reelection campaign, interfere with family relationships, and cause him to spend money in defense.

49.     Plaintiff has been harmed and has suffered damages as a result of Defendants' actions and abuse of process.

50.     Defendants' actions and abuse of legal process were done willfully and in wanton disregard of Plaintiff and his rights, justifying an award of punitive and exemplary damages.

## COUNT TWO
### (For Malicious Prosecution)

51. Plaintiff hereby incorporates the foregoing paragraphs.

52. Defendants previously initiated and maintained claims against Plaintiff, including the prosecution of claims filed in the Husteds' Lawsuit.

53. Defendants' claims against Plaintiff were dismissed and Plaintiff otherwise obtained an acquittal and discharge of the allegations, conduct, and claims that Defendants brought against him.

54. Defendants' prior prosecution was without merit and without probable cause.

55. Defendants harbored and acted upon malice against Plaintiff in bringing their prior case.

56. Plaintiff has been harmed and has suffered damages as a result of Defendants' conduct and malicious prosecution, including special injuries.

57. Defendants' conduct and malicious prosecution was done willfully and in wanton disregard of Plaintiff and his rights, justifying an award of punitive and exemplary damages.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Adrian Dickey prays that the Court enter relief and judgment as follows:

A. Entering judgment against Defendants Shawna Husted and Allen Husted, jointly and severally, in an amount equal to Plaintiff's actual, consequential, and other damages recoverable on the claims asserted herein, all interest allowable on such awards at

the maximum rate allowed by law, for punitive and exemplary damages, and for the fees and costs associated with this action;

  B. Ordering Defendants to pay Plaintiff's expenses incurred in prosecuting this action, including attorneys' fees as allowed by law;

  C. Granting Plaintiff such other and further relief as may be just and equitable.


Dated: August 18, 2025

          Respectfully submitted,

          SIMMONS PERRINE MOYER BERGMAN PLC

          /s/ Abram V. Carls
          Abram V. Carls, AT0011818
          Samuel J. Gray, AT0015718
          115 Third Street SE, Suite 1200
          Cedar Rapids, IA 52401-1266
          Tel: 319-366-7641; Fax: 319-366-1917
          acarls@spmblaw.com
          sgray@spmblaw.com
          ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

 The undersigned hereby certifies that on August 18, 2025, a copy of the foregoing document was filed with the Clerk of Court for the United States Court for the Southern District of Iowa using the CM/ECF system, and served electronically on those participants that receive service through the CM/ECF System.

          /s/ Abram V. Carls