E-FILED    CVEQ004601 - 2024 SEP 16 11:55 AM    JEFFERSON
CLERK OF DISTRICT COURT    Page 1 of 13

## IN THE IOWA DISTRICT COURT FOR JEFFERSON COUNTY

| | |
|---|---|
| KORYNN TJADEN DICKEY n/k/a KORYNN TJADEN HUSTED, SHAWNA HUSTED, and ALLEN HUSTED, <br><br> Plaintiffs, <br><br> v. <br><br> ADRIAN JEREMY DICKEY, and MARK MYERS in his capacity as JEFFERSON COUNTY IOWA, TREASURER, <br><br> Defendants. | Case No. CVEQ004601 <br><br> **RULING AND ORDER** |

### I. INTRODUCTION AND PROCEDURAL POSTURE

The matters before the Court include Defendant Adrian Dickey's ("Defendant") Motion for Summary Judgment, D0084 and D108,[1] and Motion for Sanctions, D0109. Plaintiffs Korynn Dickey, Shawna Husted, and Allen Husted (collectively "Plaintiffs") timely resisted Defendant's request for summary judgment through filings submitted on July 11, 2024. D0102.

The Court conducted a hearing on all pending motions, including for summary judgment and sanctions, on July 15, 2024. Defendant appeared personally and through counsel. Plaintiffs Shawna and Allen Husted appeared personally and through counsel. Plaintiff Korynn Dickey appeared only through counsel and was not personally present in the courtroom. At the conclusion of the hearing, Plaintiffs requested additional time to provide their written resistance to Defendant's Motion for Sanctions. The Court granted Plaintiffs until Friday, July 19, 2024, to submit their resistance, which was subsequently extended until Monday, July 22, 2024, by

---

[1] The Court previously granted Defendants Motion to Supplement the Summary Judgment Record. D0116, Order.

agreement of counsel. (Also, see entry after hearing filed July 15, 2024 regarding appearances and matters heard.)

On July 18, 2024, Plaintiffs filed a voluntary dismissal pursuant to Iowa Rule of Civil Procedure 1.943 and dismissed all their claims in this matter without prejudice. D0117. The dismissal mooted some but not all of the relief that Defendant requested in his Motions for Summary Judgment and for Sanctions.

Plaintiffs resisted Defendant's requests for sanctions on July 21, 2024. D0118. Defendant timely filed his reply briefings on July 31, 2024, D0122, and requested permission to supplement his exhibits with a recently available deposition transcript on August 6, 2024, D0127, which the Court finds is appropriate.

Following receipt of Plaintiffs' voluntary dismissal notice, the Court instructed the parties to provide a joint statement outlining the status of the case by August 5, 2024. The Court was apprised of developments during an unreported telephonic hearing held August 2, 2024. Counsel for the parties provided additional statements concerning pending matters and the status of the case by email on August 5 and 6, 2024. In those statements Defendant made known his intentions to withdraw his request for punitive damages on the counterclaims made against Plaintiffs. Defendant filed a withdrawal notice conforming to that representation on August 6, 2024. D0126. Similarly, Plaintiffs expressed their intentions to withdraw their resistance to Defendant's Motion for Sanctions, which they did on August 6, 2024. D0128. The parties' withdrawals were done voluntarily and not as part of an agreement or settlement that resolved matters that remain pending before the Court.

## II. SUMMARY JUDGMENT PRINCIPLES

Summary judgment is appropriate only when there is no genuine issue of material fact and

the moving party is entitled to judgment as a matter of law. The Court must determine whether summary judgment is appropriate by first examining the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, to determine whether there is any genuine issue of material fact. Iowa R. Civ. P. 1.981(3). When the facts are undisputed and the only issue is what consequences flow from the facts, summary judgment is appropriate. Smith v. CRST International, Inc., 553 N.W.2d 890, 893 (Iowa 1996). A fact issue is generated if reasonable minds can differ on how the issue should be resolved. Walker v. Gribble, 689 N.W.2d 104, 108 (Iowa 2000). An issue of fact is "material" only when the dispute is over facts that might affect the outcome of the suit, given the applicable governing law. Junkins v. Branstad, 421 N.W.2d 130, 132 (Iowa 1988). The requirement of a genuine issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

The moving party has the burden to show the nonexistence of a genuine issue of material fact, and the record must be viewed in the light most favorable to the nonmoving party. Id.

### III. FACTUAL FINDINGS AND ANALYSIS ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The core dispute of this case concerns a red Toyota Corolla, but the disagreements between the parties run much deeper than that. Plaintiff Korynn Dickey is the oldest daughter of Defendant Adrian Dickey and Plaintiff Shawna Husted, who separated when Korynn was a child. In the spring of 2020, near the time of her 18th birthday, Korynn announced her intentions to move to California to live with her then-boyfriend, Cassian Castillo, and attend school. Her father was understandably concerned about the move and complications caused by the existing COVID-19 pandemic, and wanted to do something nice for her. So, Defendant approached Korynn about buying a car for her to drive.

Setting aside the mechanics of how Defendant and Korynn identified the red Corolla and

3

Exhibit 1 Page 3 of 13

what they agreed to (discussed below), the parties all agree that Defendant purchased the car on July 30, 2020, and for several years Korynn drove it. No other person paid or contributed to the purchase of the car. Then, in May 2023, after Korynn returned to Iowa, her stepfather Allen Husted was driving the car in Ottumwa and was involved in an accident. The other driver missed a stop sign and caused a collision that totaled the red Corolla.

In the insurance payment process that ensued, Plaintiffs took issue with Defendant's lien reservation on the car's title. The record contains instances where Plaintiff Shawna Husted contacted the Iowa Department of Transportation with apparent intentions of having her ex-husband investigated. See Defendant's Supplemental Appendix in Support of Summary Judgment, D108 ("D-App.") at 77. This lawsuit was filed a little over a month later. While the parties disputed those claims and Defendant's eventual counterclaims, they were able to agree to escrow insurance proceeds pending a final judgment with the release "directed by the order for judgment." See D-App. at 60. Plaintiffs' counsel has subsequently informed the Court that the escrowed balance (held in her trust account) totals $23,686.75.

Defendant requests a summary judgment for that amount and an order that directs turnover of the escrow, urging that his breach of contract and unjust enrichment theories should be decided as a matter of law. The Court agrees.

To prevail on his counterclaim for breach of contract, Defendant must prove

(1) the existence of a contract; (2) the terms and conditions of the contract; (3) that it has performed all the terms and conditions required under the contract; (4) the defendant's breach of the contract in some particular way; and (5) that plaintiff has suffered damages as a result of the breach.

Iowa Arboretum, Inc. v. Iowa 4-H Foundation, 886 N.W.2d 695, 706 (Iowa 2016). Plaintiffs' resistance takes aim at the first and second elements, arguing that whether "Korynn's agreement" "constituted a contract" and whether the "responsibilities" she agreed to were "definite enough"

4

Exhibit 1 Page 4 of 13

to be "contract terms" are both in genuine dispute. D0102 at 6. The Court concludes that no such material dispute exists.

No magical language must be recited to form a contract. Iowa courts look at offers objectively, asking "whether it induces a reasonable belief in the recipient that the recipient can, by accepting, bind the sender." Heartland Express, Inc. v. Terry, 631 N.W.2d 260, 268 (Iowa 2001). The test is not diminished by donative intent, because "an altruistic motive may coexist with a valid legal contract, supported by consideration." Fritz v. Fritz, 767 N.W.2d 420 (Table), 2009 WL 779544 at *4. (Iowa Ct. App. 2009) (J. Mansfield). Thus, "where a transaction involves a bargained-for exchange" "a contract follows" "regardless of donative intent." Id. Here, the evidence in the record readily establishes that Defendant offered to purchase Korynn the red Corolla subject to certain conditions, which offer and conditions Korynn accepted. See D0084, Brief at 3-4 (collecting record cites). An oral contract "follows."

Plaintiffs' authorities do not change this conclusion. Plaintiffs correctly note that "[a]s for any oral agreement between the parties, its terms and evidence of its breach are ordinarily questions for the trier of fact," Burke v. Hawkeye Nat. Life Ins. Co., 474 N.W.2d 110, 113 (Iowa 1991); cf. D0102 at 6 (citing Burke), Plaintiffs' argument overlooks one key word, "ordinarily." An ordinary oral contract dispute exists where one party, usually the plaintiff, supplies testimony of an oral agreement, and another party, usually the defendant, testifies that no such conversation or agreement ever took place. Because the Court is prohibited from choosing between these accounts on summary judgment, the "question" remains "for the trier of fact." Id. This case is extraordinary in this respect, because unlike disputing the existence or scope of an oral contract, the evidence here establishes that Korynn agrees. D-App. 16-19; D0105, Declaration of Korynn Husted at ¶ 9 ("I agreed that, if Adrian bought me a car, I would pay for the insurance, registration, gas, and

maintenance . . ."). Minimally, having disclaimed memory of the conversations with her father at deposition prevents Korynn from genuinely resisting evidence that she entered an oral agreement in those conversations. D-App. at 9 (Korynn's deposition testimony); D-App. at 83-84 (Defendant's Declaration); cf. Susie v. Fam. Health Care of Siouxland, P.L.C., 942 N.W.2d 333, 339 (Iowa 2020) (deposition testimony precludes consideration of contradictory affidavits).

Having found by Korynn's admissions that a contract exists, this Court is "reluctant to find it too uncertain to be enforceable." Gallagher, Langlas & Gallagher v. Burco, 587 N.W.2d 615, 617 (Iowa Ct. App. 1998). In her own words Korynn identified certain terms and conditions at deposition, and cannot genuinely say that she did not understand what she meant. The conditions themselves are not "too indefinite" or "vague" as Plaintiffs argue, D0102 at 7, and a contract is not unenforceable simply because its terms could be more detailed, which is really what Plaintiffs advance, id.

The remaining elements of Defendant's contract claim—breach, damages, and performance by the non-breaching party—are supported by evidence and beyond reasonable dispute. Plaintiffs' resistance does not oppose these elements or the measurement of damages based upon the escrow balance held in Plaintiffs' counsel's trust account, $23,686.75. The Court has reviewed Plaintiffs' statement of disputed facts and associated exhibits. No material facts are put in genuine dispute. Accordingly, because the facts material to Defendant's breach of contract counterclaim point towards only one reasonable outcome, summary judgment is appropriate.

Plaintiffs alternatively argue that Korynn can avoid the consequences of her contract because a fact question "exists regarding whether Korynn had capacity to enter into an enforceable contract" in 2020. D0102 at 8. They also argue that Defendant should have explained to Korynn "what it meant for him to be the lienholder" and because he did not, "fraud" "undermine[d] or

obscure[d] Korynn's understanding" of the contract's "nature and terms." Id.

First, Iowa distinguishes between evidence of mental illness and evidence needed to establish a lack of capacity contract defense:

> Where one of the parties, for any reason, is <u>incapable of understanding</u> the force and effect of the alleged agreement, there is no contract; but <u>mere mental weakness falling short of such incapacity will not invalidate a contact</u>.

<u>In re Faris' Estate</u>, 159 N.W.2d 417, 420 (Iowa 1968) (emphasis supplied). "The question is whether [Korynn] had sufficient mental capacity to understand the contract she executed" if she chose to do so, <u>id.</u>, and here there is little doubt that she did.

Plaintiffs offer no expert medical opinions to establish Korynn's incapacity defense, and her mother's declaration about Korynn's "adulting struggles" does not establish her daughter's inability to understand. Korynn's substance abuse and in-patient treatment occurred during or around September 2022 according to Mrs. Husted's declaration, well after the contract at issue here. D0106 at ¶ 7. Testimony that Korynn "had extreme difficulty understanding concepts like budgeting," D0106 at ¶ 11, does not establish a fact question on whether Korynn was incapable of contracting. Accepting Mrs. Husted's testimony as properly qualified and true presents Korynn as a young lady who has difficulty managing her finances, difficulty remembering things people tell her, and who is at times careless and lacks attention to detail. D0106 at ¶¶ 12-17. These qualities, however, do not reasonably establish that in the summer of 2020 Korynn was incapable of understanding the terms she reached with her father.

Moreover, "[a]ny defense that a contract or writing sued on is void or voidable" "must be specially pleaded." Iowa R. Civ. P. 1.419. Plaintiffs' Answer to Counterclaims did not present a lack of capacity defense, D0058, such that even if a fact issue existed, it would inappropriate for the Court to recognize it in resistance to summary judgment.

7

Exhibit 1 Page 7 of 13

Second, whether or not Defendant explained to Korynn "what it meant for him to be the lienholder," D0102 at 8, is irrelevant. "[A] unilateral mistake by one party will not release that party from its obligation under the contract absent fraud, misrepresentation, or other misconduct." State, Dep't of Hum. Servs. ex rel. Palmer v. Unisys Corp., 637 N.W.2d 142, 150 (Iowa 2001). Korynn may dispute whether the email that Defendant sent to her is authentic and testify that she doesn't remember receiving her father's handwritten letter. D0105 ¶ 6, D-App. 41-45. What she cannot dispute is clear communication by Defendant on July 30, 2020, the date of purchase, that he would be a lienholder:

Messages - Korynn Husted & Z Adrian Dickey

> Will it all be registered in Korynns name

Korynn Husted
> yes it is in my name

Z Adrian Dickey
> I will be the lienholder it will be in Korynn's name.

Z Adrian Dickey
> It will be registered in Korynn's name

The conversation between Mrs. Husted, Defendant, and Korynn continued:

> Of course the insurance company needs the lienholder information.

Z Adrian Dickey
> Ok. I'll
> Move forward w the purchase.

> Thanks

Korynn Husted
> 🥵🥵🥵🥵

Z Adrian Dickey
> I said earlier, I will be the lien holder.

8

Exhibit 1 Page 8 of 13

D-App. 89. At the time Korynn did not show any incomprehension as to what a "lienholder" was and if she did not understand she could have asked, but didn't. There is simply no evidence that Defendant defrauded or cheated his way into becoming a lienholder on the red Corolla's title and if Korynn objected to that reservation, the time for her to speak was before the purchase and not in a lawsuit filed years later.

Because the Court has decided that an express contract existed it would be inappropriate to find an implied contract under Defendant's unjust enrichment counterclaim. In the alternative, however, the Court nonetheless finds that Defendant would be entitled to relief for the reasons identified in his briefings which the Court incorporates by this reference.

## IV. SANCTIONS PRINCIPLES, FACTUAL FINDINGS, AND ANALYSIS

Defendant moves the Court to impose default liability findings and judgments against Plaintiffs as a sanction for their misconduct in discovery. Plaintiffs originally objected to these consequences, but recently withdrew their resistance. Still, the Court will proceed to the merits of Defendant's arguments and evidence before addressing the imposition of sanctions, albeit through a more truncated analysis.

"A trial should be a search for the truth, and our rules of discovery are an avenue to achieving that goal. The discovery process seeks to make a trial into a fair contest with the basic issues and facts disclosed to the fullest practicable extent." Whitley v. C.R. Pharmacy Serv., Inc., 816 N.W.2d 378, 386 (Iowa 2012). "Generally, noncompliance with discovery is not tolerated," id. at 388, and applicable rules provide a range of consequences that supplement the Court's inherent authority to regulate misconduct before it, Est. of Ludwick ex rel. Sorsen v. Stryker Corp., 859 N.W.2d 671 (Table), 2014 WL 5475501, at *9 (Iowa Ct. App. 2014) (collecting authorities).

Still, the discretionary act of selecting an appropriate consequence is not without limits and

the range of that discretion "narrows" when the "sanctions of dismissal or default are imposed." Kendall/Hunt Pub. Co. v. Rowe, 424 N.W.2d 235, 240 (Iowa 1988). Because sanctions exist to deter discovery abuses and ensure that parties can neither hide 'the truth' nor disadvantage their opposition at trial, id. at 242, entering default as a sanction is generally "the result of willfulness, fault, or bad faith" findings, Est. of Ludwick, at *12. The evidence supports those findings here.

    Defendant's motion cites a potpourri of misconduct by each Plaintiff, who all consciously chose to participate in discovery through the act of filing suit. In spite of this choice each Plaintiff has in varying degrees delayed and outright refused to provide discovery that furthers the truth-seeking function of this Court. Plaintiff Korynn Dickey used her social media accounts to publicize information about Defendant that even her mother regarded as "misleading." D0122, Exhibit 14 (HUSTED 09711). But when requested to supply those posts and provide access to her social media accounts in discovery, which is understandably significant to Defendant establishing the scope and severity of her defamation, Korynn outright refused. The Court has ordered Korynn to comply but Korynn has instead chosen to deny access. The same is true of other discovery. From questions asked during deposition to text messages, Korynn has both invited the need for Court intervention and then ignored the obligations imposed upon her by the Court. Her actions more than satisfy the willful, at fault, and bad faith criteria for entering a default sanction.

    The evidence provided against Plaintiffs Shawna Husted and Allen Husted results in an identical conclusion. The Court notes multiple instances where the Husteds discussed spoliating evidence and delaying productions so Defendant would need to file motions and "spend more money." D0109, Exhibit 6. Their intentional production delay proved to be true. The Court also notes the exchanges where the pair discuss bribing Korynn or instructing her on what she needs to remember, after Korynn has informed them that she doesn't. D0109, Exhibit 6 and Exhibit 8 ("I

10

Exhibit 1 Page 10 of 13

don't remember . . . "Ok. You need to legally say that it was a gift . . ."). Plaintiffs continued to withhold social media credentials that would permit Defendant's inspection, as requested in discovery and ordered by the Court. They continued to withhold ordered car insurance and registration payment records, and have not explained why text message and email correspondence to the press about Defendant has not been produced. See D0109, Exhibit 7; D0122, Exhibit 14 (text messages identifying that the ordered productions exist). Even if Plaintiffs maintained their resistance to Defendant's motion, the Court would still conclude that dispositive sanctions are warranted here.

## V. CONCLUSIONS AND ORDER

**IT IS ORDERED:**

1. Summary judgment is granted on Defendant Adrian Dickey's breach of contract counterclaim against Plaintiff Korynn Dickey in the amount of $23,686.75.

2. Plaintiff Shawna Husted's and Allen Husted's liability on Defendant's tortious interference with contract counterclaim is hereby established by default, in the amount of $23,686.75.

3. Pursuant to Paragraph 3 of the Parties' escrow agreement, the "Insurance Settlement" as defined therein shall be released to counsel for Defendant Adrian Dickey within fourteen (14) days of the entry of this Order, and appropriately credited against the judgments for breach of contract and tortious interference entered herein, which are joint and several obligations of the Plaintiffs.

4. Plaintiff Korynn Husted's liability on Defendant's defamation counterclaim is hereby established by default, in the amount of $1.00.

5. This Ruling and Order is dispositive of all pending claims. Defendant Mark Myers, in his capacity as Jefferson County, Iowa, Treasurer, is hereby dismissed from this case. Trial of this case is cancelled.

6. Plaintiffs are assessed all costs.

7. Counsel shall jointly file a statement indicating compliance with this ruling, payment of costs and conclusion of this case by October 15, 2024.



State of Iowa Courts

**Case Number**       **Case Title**
CVEQ004601            DICKEY, KORYNN VS DICKEY, ADRIAN
**Type:**             OTHER ORDER

So Ordered

Daniel P. Wilson, District Court Judge,
Eighth Judicial District of Iowa

Electronically signed on 2024-09-16 11:55:42

Exhibit 1 Page 13 of 13