## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOURTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | |
|---|---|
| ADRIAN DICKEY,<br><br>    Plaintiff,<br><br>vs.<br><br>SHAWNA HUSTED and ALLEN HUSTED,<br><br>    Defendants. | Case No. 25-cv-00200-SMR-WPK<br><br>**RESISTANCE TO MOTION TO DISMISS AMENDED COMPLAINT** |

Plaintiff Adrian Dickey ("Plaintiff" or "Adrian"), by and through undersigned counsel, submits the following resistance to Defendants Shawna Husted's and Allen Husted's Motion to Dismiss Amended Complaint:

**I. Introduction**

In July 2023, Defendants Shawna Husted and Allen Husted ("Defendants" or the "Husteds") filed a lawsuit against Adrian alleging that Adrian secretly placed a lien on his daughter's vehicle's title. Defendants knew their claims were baseless, as they knew Adrian would be the lienholder at the time he acquired the car years beforehand:



Amended Petition, Dkt. 9 at ¶ 20. The Iowa District Court for Jefferson County ultimately found: "There is simply no evidence that [Adrian] defrauded or cheated his way into becoming a lienholder." Amended Petition Ex. 1.

The known absence of evidence did not stop Defendants from filing suit, however. Before the lawsuit Shawna Husted asked her daughter, Korynn Dickey (now known as Koryn Husted), whether Adrian (often referred to as "Adrianus" in Defendants' correspondence) told her "that he was the lienholder" or if she had "text messages where he talks about giving [the car] as a gift" or if she "sign[ed] any paperwork with him." Amended

Petition, Dkt. 9 at ¶ 36. Shawna told Korynn to "[t]hink about this because it's important." *Id.* When Korynn said, "I don't remember," Shawna then told Korynn what she was supposed to remember: "You need to legally say that it was a gift and you had no idea there was anything attached to it." *Id.* This was the false fact narrative that Defendants sued on and then recited to news outlets to publicly discredit and embarrass Adrian in advance of his re-election campaign.

As one might expect from people who are willing to file claims based upon knowingly false allegations, Defendants urged each other and Korynn to delete and fabricate evidence too:



Amended Petition, Dkt. 9 at ¶ 32; *see also* Amended Petition, Dkt. 9 at ¶¶ 33-37.

Before Korynn's deposition, Shawna and Allen discussed their plan to "bribe" Korynn:

> We really need to get her prepped for this deposition, and I will bribe her with something and tell her if she can keep her shit together and stay calm, she can have whatever bribe I'm giving her. I know that sounds ridiculous but that will help her stay focused and motivated. She does not even have a mental health counselor to see during this time. That would really help her but she doesn't have one until we get back to Virginia

> Loved "We really need to get her prepped for this deposit..."

Amended Petition, Dkt. 9 at ¶ 34. Allen later texted how "important" it was "for Korynn to put on the academy performance of her life next week [at depositions]." *Id*. at ¶ 35.

Defendants cannot dispute that they engaged in this behavior and initiated a lawsuit knowing that it was baseless. Instead, they seek dismissal of Adrian's claims by arguing his abuse of process claim fails because Defendants never extorted Adrian and his malicious prosecution claim fails because Adrian has not faced a special injury, cannot show a lack of probable cause, and because Defendants ultimately dismissed their lawsuit when their scheme came to light. But Adrian far surpasses the requirement to state a plausible claim at this early juncture. In fact, he states a claim that evidence already confirms and that discovery will further confirm. Defendants' motion to dismiss should be denied.

## II. Argument

Defendants attack Adrian's amended petition with a motion to dismiss. Motions to dismiss are "disfavored." *Benskin, Inc. v. West Bank*, 952 N.W.2d 292, 296 (Iowa 2020). They should only be granted where there are "no set of facts in support of [Plaintiff's] claim which would entitle it to relief." *Sioux City Cmty. School Dist. v. Int'l Tel. & Tel. Corp.*, 461 F. Supp. 662, 663 (N.D. IA 1978). At the motion to dismiss stage, "[a]ll reasonable inferences must

be drawn in Plaintiffs' favor." *Rodriguez v. Hy-Vee, Inc.*, 4:22-cv-00072-SHL-HCA, 2022 WL 16648825, at *3 (S.D. IA Oct. 21, 2022).

1. **There is no requirement that an abuse of process claim be based on extortion. Even if extortion is a requirement, Plaintiff properly pleads the ways in which Defendants extorted him.**

Defendants argue that Adrian's claim for abuse of process fails because even if their claim was frivolous, Defendants did not use it in an attempt to extort Adrian. But this perverts the well-established elements of an abuse of process claim. While extortion may be a common example of abuse of process, it is not a requirement. And if extortion is a requirement, Adrian identifies the collateral advantages that Defendants sought to extort through frivolous litigation.

"There are three elements to an abuse-of-process claim under Iowa law: (1) the use of a legal process; (2) in an improper or unauthorized manner; and (3) resulting damages." *Van Stelton v. Van Stelton*, 994 F. Supp. 2d 986, 992 (N.D. IA 2014) (Judge Bennett). Defendants do not dispute that the first element of this test was met. Dkt. 0012-1 at 13. At the motion to dismiss stage, the question is not whether the last two elements will be met following trial, but whether there is "any set of facts" that could meet these elements. *Id.* There is.

The use of process "in an improper or unauthorized manner" is often shown through "some form of extortion." *Van Stelton*, 994 F. Supp. 2d at 993. But what must be shown is not extortion, but "some act in the use of process that was not proper in the regular prosecution of the proceeding." *Id.*; *cf. id.* at 992 ("[T]he essence of this tort is an improper purpose for using the legal process."); *Reis v. Walker*, 491 F.3d 868, 870 (8th Cir. 2007) (explaining the element as "a motive to obtain some advantage collateral" to the process and which "may precede the issuance of process and still be actionable") (citing *Fuller v.*

*Local Union No. 106 of United Bhd. of Carpenters & Joiners*, 567 N.W.2d 419, 422 (Iowa 1997)). This construction explains why "carry[ing] the process to its authorized conclusion" "with bad intentions" does not alone suffice, but why "if the primary purpose of the action" is improper, the tort exists "even though there is probable cause to bring the action and the original action terminates in favor of the plaintiff." *Palmer v. Tandem Mgmt. Servs., Inc.*, 505 N.W.2d 813, 817 (Iowa 1993).[1] Key is evidence reasonably showing (or allegations plausibly showing at the pleadings stage) an improper purpose in the use of legal process.

For instance, in *Pundzak*, an improper or unauthorized use of process was found where a party told others they were going to "nickel and dime Bob Cook to death" and "bleed Bob Cook." *Pundzak, Inc. v. Cook*, 500 N.W.2d 424, 430 (Iowa 1993). And in *Van Stelton*, there was an improper or unauthorized use of process where parties used the legal process to "gain an advantage that they had not been able to acquire by any legitimate means" in an ongoing family farm squabble. *Van Stelton*, 994 F. Supp. 2d at 990, 992.

Here, Adrian alleges that Defendants used the legal process primarily "to harass [Adrian], publicly discredit and embarrass him (including by timing their lawsuit to correspond with his re-election campaign), cause him to incur significant fees, cause him to devote time and effort that diverted him away from his constituents, create a public platform through which the Husteds and Korryn Dickey could spread false and misleading information about Plaintiff, tarnish Plaintiff's reputation, cause emotional harm and irreparably damage the relationship between [Adrian] and his daughter, and such other improper purposes as may be disclosed in discovery. Amended Petition at ¶ 23. Adrian

---

[1] Intent-based issues are classically reserved for juries. *See, e.g.*, *Security Mut. Cas. Co. v. Affiliated FM Ins. Co.*, 471 F.2d 238, 243 (8th Cir. 1972) (questions of intent are "usually for the jury" (cleaned up)). Deference is particularly applicable at the pleadings stage, when the "conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

alleges that Defendants' lawsuit was brought for political reasons. *Id*. at ¶¶ 24-28. These improper purposes are supported by other allegations in Adrian's amended complaint. *See generally id.*

Moreover, this case is unlike other abuse of process cases because in this case Adrian has clear evidence that Defendants knew their allegations were false and used legal process anyway. *E.g.* Amended Petition, Dkt. 9 at ¶¶ 19-22. Following their petition and initial misuse of process, Defendants conspired to delete evidence (*id.* ¶ 32), fabricate evidence (*id.* ¶ 34-35), dive up Adrian's costs (*id.* ¶ 33), publish their (false) allegations with local new outlets to discredit Plaintiff in advance of his campaign (*id.* ¶¶ 25-30), and obtain subpoena powers that were otherwise unavailable to them (*id.* ¶ 40). None of these acts are "proper in the regular prosecution of a proceeding," *Grell v. Poulsen*, 389 N.W.2d 661, 664 (Iowa 1986) and plausibly demonstrate the "motive to obtain some advantage" beyond the lawsuit itself, *Reis*, 491 F.3d at 870.

In sum, Defendants knew Adrian would be the lienholder on the vehicle but initiated the lawsuit anyway, out of animosity and to spread misinformation about him. They then kept the lawsuit going until sanctions and punitive damages were inevitable, to force Adrian to spend more money and to harm his ongoing re-election campaign and relationship with Korynn. Defendants' conduct damaged Adrian. Amended Petition, Dkt. 9 at ¶ 42; *cf. id.* at ¶ 33 (quoting text message where Defendants communicated intention to make Adrian "spend more money").

Adrian's amended petition therefore states a claim for abuse of process, and a reasonable jury could find in Adrian's favor. A ruling to the contrary would effectively abolish the tort of abuse of process in its entirety.

**2. Adrian states a claim for malicious prosecution.**

Defendants also seek to dismiss Adrian's claim for malicious prosecution. Malicious prosecution exists where six elements are met: "(1) a previous prosecution, (2) instigation or procurement thereof by defendant, (3) termination of the prosecution by an acquittal or discharge of plaintiff, (4) want of probable cause, (5) malice in bringing the prosecution on the part of the defendant and (6) damage to plaintiff." *Sarvold v. Dodson*, 237 N.W.2d 447, 448 (Iowa 1976). There can be (and is) no dispute that there was a previous prosecution at the instigation or procurement by Defendants. The other elements also are met, and Defendants' claims otherwise misconstrue the relevant law, particularly at the motion to dismiss stage.

First, Defendants' argument that there has been no "termination of the prosecution by an acquittal or discharge" due to Defendants' voluntary dismissal can easily be disposed of. Defendants provide no authority for the premise that a party can avoid a malicious prosecution claim by dismissing their case when their scheme is unearthed. And applicable authority provides the opposite: "The requirement of showing a favorable termination in a prior action in order to support a claim of malicious prosecution may be satisfied by showing that the civil action in question was abandoned or withdrawn." 52 Am. Jur. 2d *Malicious Prosecution* § 41.

Second, Adrian has adequately alleged a lack of probable cause and the existence of malice. Probable cause means "knowledge of a state of facts which would lead a person of ordinary caution and prudence, acting conscientiously, impartially, reasonably, and without prejudice, to believe that the suit is justified." *Brown v. Monticello State Bank of Monticello,*

*Iowa*, 360 N.W.2d 81, 87 (Iowa 1984). "Malice may be actual, or it may be inferred from a want of probable cause." *Id*.

Here, Adrian's amended petition explains that Defendants knew Adrian would be listed as a lienholder before they filed a suit. Yet Defendants initiated their lawsuit anyway, and claimed Adrian acquired the lien without their knowledge. A jury may reasonably conclude that no probable cause existed in light of Defendants' pre-existing knowledge of the lien. Further, a jury may conclude from the lack of probable cause and from Defendants' hostility to Adrian ("Adrianus" to Defendants), that malice existed.

Third, even if this Court applies the requirement of a "special injury" to establish damages,[2] Adrian has alleged special injuries. Special injuries are those "which would not necessarily result in all suits prosecuted to recover for like causes of action." *Foley v. Argosy Gaming Co.*, 688 N.W.2d 244, 246 (Iowa 2004) (quoting *Brody v. Ruby*, 267 N.W.2d 902, 904 (Iowa 1978)). They can come from circumstances unique to the defendant in the previous action. *See, e.g.*, *Employers Mut. Cas. Co. v. Cedar Rapids Television Co.*, 552 N.W.2d 639, 643 (Iowa 1996) (alleged damages from interference with a contract were "arguably and/or potentially" special damages); *Whalen v. Connelly*, 621 N.W.2d 681, 688 (Iowa 2000) (discussing, in dicta, an alternative argument that plaintiff failed to support with evidence, of special damages for "hinder[ing] its initial public offering by making it more expensive").

In this case, Adrian has alleged that he was damaged by Defendants' deliberate interference with his re-election campaign and has alleged that the previous lawsuit was orchestrated to damage his re-election and divert his attention from his constituents.

---

[2] Some recent authority abandons such a requirement. *See, e.g.*, *Whalen v. Connelly*, 621 N.W.2d 681, 688 (Iowa 2000) ("We are aware other authority no longer requires this element.").

Amended Complaint, Dkt. 9 at ¶¶ 24-27. Defendants sought to have Adrian investigated by his legislative colleagues. *Id.* at ¶ 28. Defendants also told Korynn that the agreement she made with Adrian for the car was "a gift with 'no strings attached'" and then sued Adrian to advance this false narrative and irreparably damage his relationship with his daughter. *Id.* at ¶¶ 8, 20-22. These are injuries that would not be attendant in every defense to a lawsuit, and are unique injuries resulting from Adrian's unique position as a state legislator and father. Thus, Adrian has adequately pled special injuries and states a claim.

Because Adrian's amended petition pleads that each and every element of his claim for malicious prosecution is present, and supports such allegations with specific facts, dismissal is not warranted.

### III. Conclusion

While Defendants will undoubtedly raise similar arguments later, the question now is not whether Adrian has adequately proven his claims for abuse of process and malicious prosecution. The question is whether he has adequately pled those claims, and he has. Because Adrian has adequately pled and supported each and every element of his claims, Defendants' motion to dismiss should be denied.

WHEREFORE, Plaintiff Adrian Dickey respectfully requests that the Court deny Defendants' Motion to Dismiss, or alternatively and secondarily, provide a reasonable opportunity to amend his pleadings in this matter, and for such other and further relief as is just under the circumstances.

Dated: September 16, 2025

Respectfully submitted,

SIMMONS PERRINE MOYER BERGMAN PLC

/s/ Abram V. Carls
Abram V. Carls, AT0011818
Samuel J. Gray, AT0015718
115 Third Street SE, Suite 1200
Cedar Rapids, IA 52401-1266
Tel: 319-366-7641; Fax: 319-366-1917
acarls@spmblaw.com
sgray@spmblaw.com
ATTORNEYS FOR PLAINTIFF

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 16, 2025, a copy of the foregoing document was filed with the Clerk of Court for the United States Court for the Southern District of Iowa using the CM/ECF system and served electronically on those participants that receive service through the CM/ECF System.

/s/ Abram V. Carls