IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| ADRIAN DICKEY, | ) Case No. 4:25-cv-00200-SMR-WPK |
| Plaintiff, | ) |
| | ) ORDER ON MOTION TO DISMISS |
| v. | ) |
| SHAWNA HUSTED, and ALLEN HUSTED, | ) |
| Defendants. | ) |

Plaintiff Adrian Dickey filed a two-count amended complaint against his ex-wife and her husband, Shawna and Allen Husted ("Husteds"). [ECF No. 9]. His claims stem from the Husteds' conduct in a state court lawsuit that has since been dismissed. The Husteds now move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). [ECF No. 12]. For the reasons that follow, the motion to dismiss is GRANTED.

I. BACKGROUND[1]

On July 5, 2023, the Husteds filed a lawsuit in state court alleging that Dickey secretly placed a lien on a vehicle he gifted to Korynn, his daughter with Shawna, and falsely maintained a right to insurance proceeds after Allen totaled the vehicle. [ECF No. 9 ¶ 8]. The Husteds and Korynn asserted claims against Dickey for failure to perfect security interest, fraud, civil conspiracy, and unjust enrichment. *Id.* ¶ 9.

---

[1] The following facts are drawn from Dickey's amended complaint and accepted as true for purposes of the Husteds' Rule 12(b)(6) motion. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

The record shows that when Dickey purchased the vehicle, he told Shawna and Korynn that he would be the lienholder. *Id.* ¶ 20. After bringing their lawsuit, the Husteds engaged in questionable conduct: they attempted to spoliate evidence, "bribe" Korynn before her deposition, and coached her to lie. *Id.* ¶¶ 32–37. Dickey further alleges that the Husteds took extrajudicial actions designed to turn public sentiment against him, including contacting his colleagues in the state senate about the lawsuit, notifying media outlets of their allegations, and urging the Iowa Department of Transportation to open a criminal investigation. *Id.* ¶¶ 25–29, 39.

The day after a hearing on dispositive motions, the Husteds voluntarily dismissed their claims. *Id.* ¶ 17. The state district court subsequently granted Dickey's motion for summary judgment on his counterclaims for breach of contract, tortious interference with contract, and defamation. *Id.* ¶ 15; [ECF No. 9-1 at 11]. Dickey also moved for sanctions, which the district court granted after the Husteds withdrew their resistance. [ECF No. 9-1 at 2, 11].

On August 18, 2025, Dickey filed this amended complaint alleging that the Husteds' actions in the state court case constituted an abuse of process and malicious prosecution. [ECF No. 9 at ¶¶ 46–50, 51–57]. He seeks actual, consequential, punitive, and exemplary damages, as well as an order requiring the Husteds to pay all expenses he incurred in bringing this action. [ECF No. 9]. The Husteds filed a motion to dismiss for failure to state a claim. [ECF No. 12].

II. ANALYSIS

*A. Legal Standard*

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard demands more than mere

possibility—it requires factual allegations that permit the reasonable inference that the defendant is liable for the misconduct alleged. Although the Court accepts all well-pleaded facts as true and construes all reasonable inferences in Plaintiffs' favor, it need not credit bare legal conclusions or "naked assertions devoid of further factual enhancement." *Christopherson v. Bushner*, 33 F.4th 495, 499 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678).

Under the Rule 8 standard, a plaintiff is required only to set forth a "short and plain statement of the claim." Fed. R. Civ. P. 8(a). The complaint must allege with sufficient factual "heft to 'show that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 557 (cleaned up) (quoting Fed. R. Civ. P. 8(a)); *see also Johnson v. Precythe*, 954 F.3d 1098, 1101 (8th Cir. 2020) ("Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.") (citation and internal quotation omitted). These "[f]actual allegations must be enough to raise a right to relief above the speculative level" by presenting claims that are "plausible on [their] face." *Twombly*, 550 U.S. at 555, 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id.* (quoting *Twombly*, 550 U.S. at 557). Where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief," or where a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed." *Twombly*, 550 U.S. at 558, 570.

The sufficiency of a complaint hinges on its ability to raise a right to relief above mere speculation and establish a reasonable prospect that discovery will uncover evidence supporting the alleged violation. *McDonough v. Anoka County*, 799 F.3d 931, 945 (8th Cir. 2015) (citing

*Twombly*, 550 U.S. at 556). In making this determination, courts may also consider "[d]ocuments necessarily embraced by the pleadings," such as those "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (citation omitted).

Dickey alleges that the Court has diversity jurisdiction over his tort claims pursuant to 18 U.S.C. § 1332. Accordingly, the Court applies Iowa substantive law to this dispute. *MBI Oil & Gas, LLC v. Royalty Ints. P'Ship, LP*, 146 F.4th 650, 655 (8th Cir. 2025) (citation omitted).

### B. Abuse of Process

"[A]buse of process is 'the use of legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it was not designed.'" *Fuller v. Local Union No. 106*, 567 N.W.2d 419, 421 (Iowa 1997) (quoting *Palmer v. Tandem Mgmt. Servs., Inc.*, 505 N.W.2d 813, 817 (Iowa 1993) (en banc)). "Normally the improper purpose sought is an attempt to secure from another some collateral advantage not properly includable in the process itself." *Id.* (citation omitted). "This amounts to 'a form of extortion in which a lawfully used process is perverted to an unlawful use.'" *Id.* (citation omitted); *see also Schmidt v. Wilkinson*, 340 N.W.2d 282, 284–85 (Iowa 1983) (concluding plaintiff stated viable abuse of process claim by alleging "a form of extortion").

Under Iowa law, an abuse of process claim has three elements: (1) use of a legal process, (2) in an improper or unauthorized manner, and (3) the plaintiff suffered damages as a result. *Stew-Mc Dev., Inc. v. Fisher*, 770 N.W.2d 839, 849 (Iowa 2009) (citation omitted); *see also DreamTeam Dev., LLC v. Irlbeck*, Case No. 4:23-cv-00209-SMR-SBJ, 2023 WL 8522982, at *5 (S.D. Iowa Nov. 3, 2023). The second element requires that the process was used "*primarily* for an impermissible or illegal motive." *Stew-Mc Dev.*, 770 N.W.2d at 849 (emphasis in original)

(citation omitted). An abuse of process claim must be dismissed if the plaintiff's allegations "lack[] a cognizable legal theory." *Van Stelton v. Van Stelton*, 994 F. Supp. 2d 986, 991 (N.D. Iowa 2014).

Dickey asserts that the Husteds abused legal process by filing the state court lawsuit and by making criminal or quasi-criminal references to the Iowa Department of Transportation or its investigators. [ECF No. 9 ¶ 47]. The Husteds primarily attack the second element of Dickey's claim. They argue that Dickey has not alleged that they used legal process for an "impermissible purpose or illegal motive." *Johnson v. Farm Bureau Mut. Ins. Co.*, 533 N.W.2d 203, 209 (Iowa 1995). Specifically, the Husteds contend that Dickey has not alleged sufficient facts to demonstrate that the primary purpose for filing the state court lawsuit was to extort him or obtain a collateral advantage.

At the outset, Dickey's claim that "the Husteds repeatedly urged the Iowa DOT to open a criminal investigation and prosecute [Dickey] criminally" fails on the first element. [ECF No. 9 ¶ 39]. This allegation is akin to reporting "possible criminal activity." *Fuller*, 567 N.W.2d at 422. Reporting criminal activity does not constitute a use of process even if done with "improper motives prompting a false or reckless report." *Id.* As such, the Husteds' reports to the Iowa Department of Transportation, whether false or not, do not constitute the legal process required for an abuse of process claim. *Id.*

The Husteds' do not dispute that the filing of the state court lawsuit was a use of process. *See Van Stelton*, 994 F. Supp. 2d at 992. Accordingly, Dickey's claim proceeds to the second element. Abuse of process claims "routinely fail" at this stage because plaintiffs often cannot meet the "extraordinarily high" burden of pleading an improper purpose. *DreamTeam Dev.,* 2023 WL

8522982, at *6; *see also Carter v. Ludwick*, 724 F. Supp. 3d 774, 815–16 (S.D. Iowa 2024); *Palmer*, 505 N.W.2d at 817 ("A very restrictive view is taken of this element.").

Dickey alleges that the Husteds filed their lawsuit with the primary purpose to harass him as well as:

> publicly discredit and embarrass him (including by timing their lawsuit to correspond with his re-election campaign), cause him to incur significant fees, cause him to devote time and effort that diverted him away from his constituents, create a public platform through which the Husteds and Korynn Dickey could spread false and misleading information about Plaintiff, tarnish [Dickey's] reputation, cause emotional harm and irreparably damage the relationship between [Dickey] and his daughter.

[ECF No. 9 ¶¶ 23, 48]. These allegations fail to establish a cognizable claim. Thus, Dickey does not state a claim upon which relief may be granted.

Dickey does not present a typical abuse of process claim because he does not allege that the Husteds used the process to pressure him to pay a different debt or take some other action. *Int'l Motor Contest Ass'n, Inc. v. Staley*, 434 F. Supp. 2d 650, 676 (N.D. Iowa 2006) (quoting *Pundzak, Inc. v. Cook*, 500 N.W.2d 424, 429–30 (Iowa 1993)). Although extortion is not required, the usual abuse of process claim features similar conduct in which a party attempts to secure some collateral advantage not properly included in the process itself. *Fuller*, 567 N.W.2d at 421; *see also Reis v. Washington*, 491 F.3d 868, 870 (8th Cir. 2007) ("[A]buse of process cases usually involve 'some form of extortion.'") (citation omitted); *Wilson v. Hayes*, 464 N.W.2d 250, 266 (Iowa 1990) ("Simply put, the improper purpose relates to an extortion or coercion attempt by one person to do some other thing."). That is not the case here.

Dickey does not allege that the Husteds used legal process to secure any benefit beyond the insurance proceeds from the vehicle. Rather, his allegations highlight only the motives the Husteds had for filing the lawsuit, not that they sought to obtain some additional collateral

advantage. *Palmer*, 505 N.W.2d at 817. This is plainly insufficient to sustain an abuse of process claim. Proof of an improper motive, even a malicious purpose, does not satisfy this element. *Grell v. Poulsen*, 389 N.W.2d 661, 664 (Iowa 1986); *see also MCI Commc'ns Servs., Inc. v. Futurephone.com, LLC*, No. 5:07-cv-04095-JEG-RAW, 2016 WL 11641720, at *47 (N.D. Iowa Aug. 29, 2016). Put simply, Dickey has not identified anything the claims were intended to extort from him that fell outside "the proper goals of the litigation." *Jensen v. Barlas*, 438 F. Supp. 2d 988, 1003 (N.D. Iowa 2006).

Further, Dickey does not allege that the Husteds committed an act improper "in the regular prosecution of the proceeding" or took any "specific action in connection with their use of process which can be characterized as unlawful or irregular." *Grell*, 389 N.W.2d at 664; *see also Wilson*, 464 N.W.2d at 266 ("[A] definite act or threat outside the process is required.") (citation omitted); *Tomash v. John Deere Indus. Equip. Co.*, 399 N.W.2d 387, 391 (Iowa 1987) (same). In fact, Dickey's complaint undercuts his position. It states that he brought this action "to hold the Husteds accountable" for the costs of their baseless suit and other related actions, which they initiated despite knowing falsity and for improper purposes. [ECF No. 9 ¶ 18]. Dickey emphasizes that his abuse of process claim is about the filing of the lawsuit, not an act outside the regular prosecution designed to obtain a collateral benefit, by alleging that the "knowing absence of evidence to support their position did not stop the Husteds from initiating and maintaining their suit." *Id.* ¶ 22. He further alleges that the Husteds' improper purposes are evidenced "through their assertions and lawsuit," not through other acts that could be characterized as unlawful or irregular. *Id.* ¶ 23. Accordingly, these allegations fall short of pleading a plausible abuse of process claim. *See Royce v. Hoening*, 423 N.W.2d 198, 202 (Iowa 1988) (the failure of a claim, without more, cannot "furnish proof of some collateral advantage gained by pursuit of the claim").

The closest Dickey comes to alleging an improper act is the Husteds' communication of their allegations to media outlets, the public, and his legislative colleagues. *Id.* ¶¶ 25, 28–29. Dickey alleges that the Husteds' subjective motivations for contacting his colleagues was to initiate an investigation or prompt statements about him on the legislative floor, encourage the filing of an ethics complaint, or "to otherwise create an atmosphere of distrust towards him during the legislative session or campaign." *Id.* ¶ 28. These potential motivations are irrelevant for determining whether the action taken by the Husteds—publicizing their complaint—is an irregular act in connection with their use of process.

Although there is no Iowa case law directly answering this question, courts around the country routinely reject such arguments. *See, e.g.*, *Ancier v. Egan*, Civil No. 14–00294 JMS–RLP, 2014 WL 6872977, at *7 (D. Haw. Dec. 4, 2014) (holding that a press conference and media campaign to publicize allegations was not an improper act in the regular conduct of the proceedings); *Sands v. Living Word Fellowship*, 34 P.3d 955, 961 (Alaska 2001) (holding improper publication of suit does not support abuse of process claim); *Addison Whitney, LLC v. Cashion*, 17 CVS 1956, 2017 WL 5973019, at *4 (N.C. Sup. Ct. Dec. 1, 2017) (concluding that out-of-court acts designed to generate negative publicity "are not the type of acts that give rise to a claim for abuse of process."); *Beacon Journal Publ'g Co. v. Zonak, Poulos & Cain*, No. 79AP–123, 1979 WL 209335, at *3 (Ohio Ct. App. Sept. 25, 1979) (finding that press conferences and public distribution of complaint did not constitute an abuse of process). The most analogous Iowa case reached the same conclusion. *See Phelps v. Powers*, 5 F. Supp. 3d 1036, 1039–43 (S.D. Iowa 2013) (dismissing police chief's abuse of process claim premised on a publicization of lawsuit containing allegedly false accusation and wrongfully naming him as a party).

But even if the Court reaches the alleged improper purposes asserted by Dickey, each fails as a matter of law. He claims that the Husteds' lawsuit had the primary purpose to embarrass him, harm his reputation, create a distraction, and interfere with his personal relationships—all different allegations of harassment. [ECF No. 9 ¶ 48]. Such allegations are not an improper purpose sufficient to support a claim for abuse of process. *See Dream Team Dev.*, 2023 WL 8522982, at *6 (dismissing abuse of process claim as insufficient when premised on the initiation of a lawsuit intended to cause emotional distress); *Jensen*, 438 F. Supp. 2d at 1003 (holding harassment and humiliation are insufficient as a matter of law to sustain an abuse of process claim); *Palmer*, 505 N.W.2d at 817 (finding a lawsuit to intimidate, embarrass, and inconvenience the opposing party is not an improper purpose); *Froning & Deppe, Inc. v. S. Story Bank & Tr. Co.*, 327 N.W.2d 214, 215–16 (Iowa 1982) (holding that a lawsuit commenced to intimidate and embarrass a defendant did not support an abuse of process claim).

Likewise, initiating a lawsuit knowing that it would cause Dickey to incur legal fees in defense is not sufficient to constitute abuse of process. *Dream Team Dev.*, 2023 WL 8522982, at *5–6 (holding lawsuit filed to cause defendant financial burden and limit future employment opportunities insufficient for abuse of process claim); *Royce*, 423 N.W.2d at 202 (explaining that counterclaim "motivated solely by a desire to increase [litigant's] litigation expense" was insufficient to support an abuse of process); *cf. Phelps*, 5 F. Supp. 3d at 1042–43 (determining that engaging in litigation to compel defendant to pay plaintiffs' attorney fees and costs is not an improper purpose). Nor is the alleged improper purpose of causing Dickey to devote time and effort to the litigation sufficient. *Johnson*, 533 N.W.2d at 209 (holding that a defendant is not liable for abuse of process if he "has done no more than carry the process to its authorized conclusion, even with bad intentions.'") (quoting *Wilson*, 464 N.W.2d at 267).

Finally, the alleged improper purpose of creating a public platform through which the Husteds and Korynn could air their allegations is also insufficient; they could have publicly shared their grievances even if there were no lawsuit. *Phelps*, 5 F. Supp. 3d at 1039 (dismissing abuse of process claim despite allegations that party wrongfully named claimant and intentionally publicized allegations); *see also Sands*, 34 P.3d at 961.

As such, Dickey's abuse of process claim fails. He does not allege that the Husteds attempted to gain a "collateral advantage not properly includable in the process itself." *Palmer*, 505 N.W.2d at 817. Nor does he allege "an act not proper in the regular prosecution of the proceeding." *Grell*, 389 N.W.2d at 664. Further, his allegations are insufficient to demonstrate the Husteds primarily acted with an improper purpose. Thus, his abuse of process claim does not present a cognizable legal theory and must be dismissed.

*C. Malicious Prosecution*

Dickey's malicious prosecution claim also fails. This tort claim has six elements: (1) a previous prosecution, (2) instigation of that prosecution by the defendant, (3) termination of that prosecution by acquittal or discharge of the plaintiff, (4) want of probable cause, (5) malice in bringing the prosecution, and (6) damage to the plaintiff. *Wilson*, 464 N.W.2d at 259 (quoting *Royce*, 423 N.W.2d at 200). The sixth element requires damage from "an arrest of the person, seizure of property or special injury—injury that would not ordinarily result in all similar cases involving such a claim." *Whalen v. Connelly*, 621 N.W.2d 681, 688 (Iowa 2000) (citation omitted). The primary purpose of a malicious prosecution claim is to provide relief when a plaintiff brings a meritless suit with an improper motive. *Wilson*, 464 N.W.2d at 259 (citation omitted). Courts generally disfavor this remedy and strictly construe its requirements. *Id.*

The Husteds attack Dickey's claim on three grounds. First, they argue that the sixth element is not met because Dickey fails to allege a special injury. Second, they contend that the fourth element is not met because Dickey failed to allege sufficient facts demonstrating that the previous litigation lacked probable cause. Third, they assert that the third element is not met because they voluntarily dismissed their claims, preventing an adjudication on the merits.

The Court agrees that Dickey failed to allege a special injury. Although Dickey notes that many states have recently dropped this element, Iowa has not. *See Whalen*, 621 N.W.2d at 688 (retaining special injury requirement while recognizing other jurisdictions have abandoned it). The Court therefore cannot ignore an element that Dickey was required to plead to state a claim. *Foley v. Argosy Gaming Co.*, 688 N.W.2d 244, 246–47 (Iowa 2004) (reaffirming special injury requirement on certified question).

Dickey alleges that his special injuries include the Husteds contacting his legislative colleagues to initiate an investigation, irreparable damage to his relationship with Korynn, and damage to his reelection campaign and diversion of attention from constituents. In determining whether a special injury exists, the Iowa Supreme Court distinguishes "between the ordinary trouble and expense which regularly attend litigation (whether legitimately or maliciously prosecuted) and the unusual hardship arising from arrest, seizure of property or other special circumstances." *Jensen*, 438 F. Supp. 2d at 998 (quoting *Foley*, 688 N.W.2d at 248). Dickey's allegations fail to demonstrate any such "unusual hardship." *Id.* Rather, his alleged injuries are the "ordinary trouble" that would regularly attend any litigation. *Id.*

Dickey's allegations operate under two flawed premises. First, his allegations effectively claim that the injuries he suffered are special to him due to his roles as a father and state legislator. This is the not the proper lens through which the Court can evaluate Dickey's alleged injuries.

Presumably, every litigant has some unique characteristic that differentiates his situation from another's. But that does not mean that these characteristic-specific injuries constitute an unusual hardship simply because they are not shared by others. *Foley*, 688 N.W.2d at 246.

Decades of case law demonstrate this point. For example, in one case, a son sued his father for malicious prosecution after the father sought to rescind a contract they had executed regarding the manufacturing business they operated as partners. *Aalfs v. Aalfs*, 66 N.W.2d 121, 159 (Iowa 1954). The Iowa Supreme Court concluded that the son did not suffer a special injury—as required to plead a malicious prosecution claim—when he alleged that "he ha[d] been deprived of the free use" of company assets, his sale of company assets was interfered with, "he was unable to continue the operations of the company in the wholesale trade," he was forced to restrict the company's manufacturing business, and "he could not obtain bank credit for his manufacturing operations." *Id.* at 160, 166. Despite the fact that many of these injuries were unique to that son's role as a partner in that manufacturing company, the court concluded that these consequences were "not peculiar" to him and were instead inherent "in the very nature of the action." *Id.* at 168.

Likewise, in *Argosy Gaming*, the Iowa Supreme Court concluded that special damages "do not include non-renewal of insurance" or "loss of financing" despite the fact that these injuries would only apply to a certain subset of litigants. 688 N.W.2d at 249. The court reached this conclusion because it did not think it extraordinary that a defendant engaged in business, facing a multi-count complaint, would suffer such injuries. *Id.* Thus, the court again took into account the litigant's unique characteristic before determining that these injuries were part of the "ordinary trouble and expense which regularly attend litigation." *Id.* at 248 (quoting *Royce*, 423 N.W.2d at 201). Other cases analyze this element in a similar manner. *See, e.g.*, *Brody v. Ruby*, 267 N.W.2d

902, 905 (Iowa 1978) (holding plaintiff did "not present a claim of 'special injury' to professional reputation that would not accompany most professional malpractice actions").

Second, Dickey frames his injuries too narrowly. His complaint effectively alleges that the Husteds' lawsuit caused him to devote time to his defense, expend money, and suffer embarrassment, stress, and inconvenience. These are not special injuries under Iowa law. *See Jensen*, 438 F. Supp. 2d at 1000 (concluding that unusually severe stress is not a special injury); *Foley*, 688 N.W.2d at 248 (explaining that "[t]hose who must defend against lawsuits often incur significant costs"); *Whalen*, 621 N.W.2d at 688 (holding that "incidental costs to defend against a lawsuit are not special damages"); *Royce,* 423 N.W.2d at 201 (finding no special injury when plaintiff suffered "reputational harm, humiliation, anxiety, inconvenience[,] and expenses"); *Brody*, 267 N.W.2d at 905 (noting that mental distress resulting from a malpractice action was not a special injury); *Aalfs*, 66 N.W.2d at 125 (citing favorably a case holding that a lawsuit brought "to cast discredit and suspicion upon the defendant" was not a special injury because those were the "uncompensated burdens of litigation") (citation omitted). The Court agrees with these well-reasoned decisions.

Further, Dickey did not actually suffer an injury related to his campaign. He won reelection. [ECF No. 9 ¶ 1]. Likewise, the Husteds' attempt to have Dickey investigated by his legislative colleagues is insufficient because Dickey does not allege that he was investigated or harmed. Thus, although the Husteds' may have intended that Dickey suffer an injury on these grounds, he fails to allege that he actually suffered one. Moreover, damage to relationships between parties is unfortunately an ordinary result of an acrimonious lawsuit, regardless of whether the claim is legitimate or malicious.

Dickey does not cite any cases where a court held that similar allegations constitute special injuries. A ruling to the contrary would effectively open up this narrow tort to any case in which a party was a legislator or a parent, thus defeating the requirement that courts strictly construe such claims. *Wilson*, 464 N.W.2d at 259. As such, Dickey fails to allege that he suffered an injury "which would not necessarily result in all suits prosecuted to recover for like causes of action." *Foley*, 688 N.W.2d at 246 (quoting *Brody,* 267 N.W.2d at 904). His malicious prosecution claim is accordingly dismissed.

### III.    CONCLUSION

For the foregoing reasons, the Husteds' motion to dismiss is GRANTED. [ECF No. 12]. Dickey fails to allege an improper purpose sufficient to sustain his claim for abuse of process. Nor does he allege that the Husteds committed an act not proper in the regular prosecution of the proceeding or sought to obtain some collateral advantage. His malicious prosecution claim must also be dismissed because he fails to allege that he suffered a special injury.

IT IS SO ORDERED.

Dated this 29th day of October, 2025.

_____
STEPHANIE M. ROSE, CHIEF JUDGE
UNITED STATES DISTRICT COURT